KNOTT v. RAILROAD.

(Filed October 9, 1906).

*Railroads—Fires—Pleadings—Evidence.*

1. Where the plaintiff alleges that the spark-arrester was defective and the right-of-way foul, and states generally that the fire was caused by a spark emitted from the engine, which ignited the combustible material on the right-of-way, and thence spread to his standing timber, the plaintiff is not restricted to proof only of a defect in the spark-arrester and the bad condition of the right-of-way, and evidence as to a defect in the fire-box was not irrelevant and prejudicial.

2. In an action for damages to property alleged to have been burned by the emission of sparks from defendant's engine, it is not material to inquire how a spark happened to fall from the engine, whether from the smoke-stack or the fire-box, so that it lighted on the right-of-way, which was in bad condition, and caused the fire.

3. In an action for damages to plaintiff's timber alleged to have been burned by the emission of sparks from defendant's engine, testimony of a witness that he had seen the same engine which caused the fire when plaintiff's timber was burned on April 4th, as it passed and repassed, and that sparks were flowing from the smokestack every night between 15 February and 15 April, and that it set the right-of-way on fire where the timber stood, is competent.

ACTION by J. B. Knott and wife against Cape Fear and Northern Railroad Company, heard by *Judge W. B. Council* and a jury, at the April Term, 1906, of the Superior Court of WAKE.

The plaintiff alleged that he owned a tract of land through which the defendant's railway ran. That defendant permitted its right-of-way to become foul with leaves, brush, and other combustible material, and also used an engine without a proper spark-arrester to its smoke-stack. The seventh and eighth sections of the complaint read as follows:

"That on or about 4 April, 1904, the said combustible matter then and there being on the defendant's said right-of-way, which said combustible matter the defendant had negligently and carelessly failed to remove, was set on fire by a spark emitted from one of defendant's engines, and the fire thereby started was communicated to the lands of the plaintiffs. That the fire communicated as aforesaid to the lands of the plaintiffs spread through the woods upon the lands and burned over nearly the whole of said land; that the land so burned over amounted to one hundred and thirty acres, to the great damage of the plaintiffs."

The material allegations of the complaint were denied in the answer. The plaintiff introduced testimony tending to establish the allegations of his complaint, and the defendant's proof tended to show the contrary. The plaintiff's counsel on the cross-examination of defendant's witness, W. J. Angier, asked him the following questions, which were admitted, and the defendant excepted:

"When the steam was shut off and the train was rolling down grade, were not sparks shaken frequently out of the fire-box? Ans.: Yes; but when they fall out of the fire-box they fall into the ash-pan.

"When they fall out of the ash-pan where do they fall? Ans.: I do not know."

A witness for the plaintiff, J. W. Adcock, was permitted to testify that sparks could be seen coming from the engine in question every night between 15 February and 15 April, 1904, and that it set the right-of-way "along there" on fire; and another of the plaintiff's witnesses, D. H. Fuquay, testified that he had taken notice of the engine. That in the daytime you could seldom see any sparks or fire, but occasionally you could see fire at night flowing from the smoke-stack and falling from the ash-pan. All of this testimony was duly objected to by the defendant. The defendant did not ask for any special instructions.

The Court thus charged the jury upon the first issue: "The negligence charged in the complaint is that the defendant permitted its right-of-way to become foul by the accumulation of inflammable matter upon it, and that its engine was not equipped with the proper kind of spark-arrester, and that by reason of the condition of the right-of-way and engine a spark was emitted from the engine of defendant, No. 99, and came in contact with the matter on the right-of-way, and in this manner set out the fire that burned plaintiffs' woods and land. The plaintiffs, having alleged that defendant negligently burned their property and pointed out in the complaint the negligence charged, before the plaintiffs are entitled to have this issue answered 'Yes,' they must satisfy you by the greater weight of evidence that the defendant so negligently burned their property." There was no exception to the charge. The issues, with the answers thereto, were as follows:

"1. Was plaintiffs' property burned by the negligence of the defendant, as alleged in the complaint? Ans.: 'Yes.'

2. What damage, if any, are plaintiffs entitled to recover?
Ans.: '$600.' "

Judgment was entered upon the verdict, and the defendant
appealed.

*Graham & Devin* and *Argo & Shaffer* for the plaintiffs.
*H. E. Norris* for the defendant.

WALKER, J., after stating the case: The contention of the
defendant, based upon the testimony of the witness, W. J.
Angier, which was admitted by the Court over defendant's
objection, is that the plaintiff in his complaint alleges, as the
only acts of negligence on the part of the defendant, that the
right-of-way was foul and the spark-arrester attached to the
smoke-stack was defective, and there being no allegation in
regard to the fire-box, any evidence as to a defect in that was
irrelevant and prejudicial. It does not appear to us, after
a careful reading of the complaint and giving it that liberal
construction with a view to substantial justice between the
parties which is required by the law (Revisal, sec. 495), that
the plaintiff has thus restricted himself to proof only of the
defect in the spark-arrester and the bad condition of the right-
of-way. It is true, he alleges that the spark-arrester was
defective, but in the seventh section of the complaint he
states generally that the fire was caused by a spark emitted
from the engine, which ignited the combustible material on
the right-of-way and thence spread to his standing timber,
which was destroyed. But can it make any difference in the
legal aspect of the case, whether the spark or live coal came
from the smoke-stack or the fire-box, even assuming them to
have been in the best condition, if eventually it fell upon the
foul right-of-way and produced the conflagration? We think
not, because the permitting its right-of-way to remain in a
dangerous condition was an act of negligence, sufficient of
itself to cause the damage and necessarily proximate to it, if

142—16

KNOTT *v.* RAILROAD.

the fire immediately, and without any intervening efficient and independent cause, spread to the plaintiff's woods. *Aycock v. Railroad,* 89 N. C., 321; *Phillips v. Railroad,* 138 N. C., 12; *Railroad v. Kellogg,* 94 U. S., 469.

If one does an act, lawful with respect to the complaining party, and does it in a proper way, the ensuing loss, if there is any, is not, in the legal sense, an injury, but *damnum absque injuria.* If the act is unlawful, or is done in an unlawful manner, it is an actionable wrong; and of course if it is done negligently, or, in other words, if in doing it he fails to exercise the foresight of a man of ordinary prudence and by reason thereof does not see that some damage will follow, when otherwise he would have discovered it, the wrongdoer is liable for the damage which proximately results. *Drum v. Miller,* 135 N. C., 204; *Jones v. Railroad,* and *Hudson v. Railroad,* at this term.

The quality or particular character of the act of negligence is immaterial, so that it is sufficient to produce the injury. The Judge, after reciting substantially the allegation of the complaint, charged the jury in this case that before they could bring in a verdict for the plaintiff they must find that the defendant committed the very acts of negligence so set forth by him, that is, that the spark-arrester was defective and the right-of-way foul, and that by reason of the defect in the spark-arrester a spark was emitted from the engine and fell on the right-of-way, where it ignited the inflammable material there lying and caused the destruction of the plaintiffs' property. So that the jury must have found that the spark-arrester was defective and the right-of-way foul, as they gave the plaintiff their verdict.

By the charge the testimony as to the fire-box and ash-pan was virtually taken from the jury. There were two acts of carelessness specified by the plaintiff in one part of his complaint, namely, having a defective spark-arrester and keeping a foul right-of-way; but when he came to allege, in another

part, the negligence that caused the injury, he departed from this specific allegation and charged generally that the spark fell from the engine, without describing the particular place from which it was emitted, and that by reason thereof the fire was started on the right-of-way.  In no view of the matter is it material to inquire how it happened to fall from the engine, so that it lighted on the right-of-way, which was in bad condition, and caused the fire.  *Simpson v. Railroad,* 133 N. C., 95 ; *Troxler v. Railroad,* 74 N. C., 377 ; *Wise v. Railroad,* 85 Mo., 178.  It does not necessarily require two acts of negligence to make a wrong.  The jury must have found, as we have already said, that the right-of-way was foul, for there was no allegation that the spark fell outside of it, but on it, and if they followed his Honor's charge—and it must be assumed that they did—we are bound to conclude that they so found, as the foulness of the right-of-way was one of the integral elements of the negligence charged in the complaint, and they were clearly instructed, as has been shown, that unless they found the facts to be as therein alleged, they should return a verdict for the defendant.  Having found this act of negligence, it was sufficient to sustain the verdict, and any error as to the fire-box and ash-pan, if there be any, was of course harmless.

The view we have taken is fully supported, we think, by the recent decision of this Court in *Williams v. Railroad,* 140 N. C., 623, where the *Chief Justice,* with great clearness, summarizes the law of negligence bearing upon cases of the class to which this belongs.  We said in *Simpson v. Railroad, supra:* "It can make no difference with respect to the plaintiff's right to recover whether the burning (of plaintiff's timber) was caused by a defective engine or by setting on fire combustible material carelessly left by the defendant on its right-of-way."  See also *Craft v. Timber Co.,* 132 N. C., 151, in which the question of the liability of a railroad or a logging-road for fires started on its right-of-way by its engines is con-

sidered.   The decisions in other jurisdictions seem to be in perfect accord with our own on this question.   3 Wood on Railways (Ed. 1894), sec. 329; Baldwin Am. Railroad Law, 440; *Railroad v. Salmon,* 39 N. J. L., 299; *Railroad v. Rogers,* 62 Ill., 346; *Longabaugh v. Railroad,* 9 Nev., 271; *Salmon v. Railroad,* 38 N. J. L., 5.   In Baldwin Am. R. Law, p. 441, it is said: "To support the action in these cases for burning property, it is not necessary to show that there was negligence in letting the engine scatter sparks.   It is inevitable that some sparks should escape.   The actionable negligence is that, notwithstanding this, the company left material on its premises upon which such sparks would naturally fall, and which they would naturally set ablaze."   A typical case upon this subject is that of *Railroad v. Medley,* 75 Va., 499, where *Staples, J.,* says for the Court: "A railway company may be supplied with the best engines and the most approved apparatus for preventing the emission of sparks, and operated by the most skilful engineers.   It may do all that skill and science can suggest in the management of its locomotives, and still it may be guilty of gross negligence in allowing the accumulation of dangerous combustible matter along its track, easily to be ignited by its furnaces, and thence communicated to the property of adjacent proprietors.   Conceding that a railroad company is relieved of all responsibility for fires unavoidably caused by its locomotives, it does not follow it is exempt from liability for such as are the result of its negligence or mismanagement.   The removal of inflammable matter from the line of the railroad track is quite as much a means of preventing fires to adjoining lands as the employment of the most improved and best constructed machinery."

It all comes to this, that whether the spark-arrester or the fire-box was defective or not, if a spark was emitted from the engine and kindled the fire on defendant's right-of-way because it was foul, it is liable to the plaintiff for the loss of his timber caused thereby, and that fact having evidently

been found by the jury, all evidence as to the defectiveness of the fire-box or as to live coals dropping therefrom, and even that as to the spark-arrester, was irrelevant and harmless.

The testimony of the witnesses Adcock and Fuquay was clearly competent, and there can be no doubt that it was relevant to the issue being tried. That they had seen the same engine which caused the fire when plaintiff's timber was burned, as it passed and repassed, and that sparks were flowing from the smoke-stack, and that between February and April, as stated by one of the witnesses, "it set fire on the right-of-way" near where the timber stood, must be some evidence bearing upon the actual condition of the engine and showing that it was defective in some way. But the very question has been recently decided by this Court and such evidence held to be relevant. *Johnson v. Railroad,* 140 N. C., 581. It is therefore useless to prosecute the inquiry any further. The case of *Ice Co. v. Railroad,* 126 N. C., 797, instead of being an authority against the admissibility of the testimony, by the plainest implication decides it to be competent and relevant. But as was the case with the other evidence to which the defendant objected, the questions put to the witnesses Adcock and Fuquay were immaterial and the answers thereto did no harm, as it made no difference whether the engine was defective or not, the bad condition of the right-of-way, which fact was manifestly found by the jury, being fully sufficient to sustain their verdict.

We find no error in the trial of this case.

No Error.